*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0088P (6th Cir.)
File Name: 00a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*
 No. 98-6142

MARK MOODY,
  *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
Nos. 93-00035; 97-00024—Thomas G. Hull,
District Judge.

Argued: September 24, 1999

Decided and Filed: January 25, 2000[*]

Before: MERRITT and CLAY, Circuit Judges;
WISEMAN, District Judge.[**]

---

[*] This decision was originally issued as an "unpublished decision" filed on January 25, 2000.

[**] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Michael E. Winck, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellant. Nikki C. Pierce, ASSISTANT FEDERAL COMMUNITY DEFENDER, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellee. **ON BRIEF:** Michael E. Winck, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellant. Nikki C. Pierce, ASSISTANT FEDERAL COMMUNITY DEFENDER, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court, in which MERRITT, J., joined. WISEMAN, D. J. (pp. 13-17), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. The government appeals from the district court's order denying reconsideration of its order granting Defendant Mark Moody's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. The government also appeals the district court's orders resentencing Moody to sixty months of imprisonment for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. For the reasons set forth below, we **REVERSE** the judgment of the district court.

**I.**

During the late 1980s and early 1990s, Moody participated in a conspiracy to deal cocaine with two other men. Under their arrangement, Moody provided one of the men with the funds to pay for the cocaine, and he would acquire cocaine in Florida and transport it back to Tennessee. Moody acquired

approximately one-quarter kilogram of cocaine per month for resale.

On February 2, 1993, agents of the Federal Bureau of Investigation ("FBI") executed twenty-five search warrants on targets of its investigation into this conspiracy, including Moody's home and business. The FBI seized one kilogram of cocaine during these searches, and obtained information linking Moody to that cocaine. Shortly after the execution of the search warrants, Moody approached the FBI and offered to cooperate with FBI agents in their investigation of the drug conspiracy. During six interviews conducted in February and March of 1993, Moody, without the assistance of counsel, voluntarily provided FBI agents with information about the roles of others in the conspiracy and made numerous self-incriminating statements.[1]    The Assistant United States Attorney for the Eastern District of Tennessee was present during the first and last of these debriefings.

During their interviews of Moody, government attorneys offered Moody a deal in which the government would limit his exposure to a maximum of five years of imprisonment if Moody agreed to plead guilty to conspiracy in connection with the one kilogram of cocaine seized by FBI agents on February 2, 1993, and agreed to continued cooperation, including testifying at trial. When Moody expressed a reservation about this, the Assistant United States Attorney and the FBI Special Agent stated that the offer from the government was a "good deal," and also suggested that Moody seek the advice of an attorney. Moody sought the services of attorney Richard W. Pectol, paying him $5,000. Pectol contacted the government for the first time more than a month later, rejecting the offer on Moody's behalf. Pectol did not inquire into the substance of the interviews or the nature of Moody's admissions, nor did he obtain copies of the FBI reports memorializing the interviews.

---

[1]Moody admitted that during the last six months of the conspiracy, his co-conspirator brought back at least twelve kilograms of cocaine for distribution by the conspirators.

The government indicted Moody on June 23, 1993, charging him with conspiring to distribute cocaine in violation of 21 U.S.C. § 846 and related offenses. By the time of the indictment, the government had information that the conspiracy involved eighteen kilograms of cocaine. Moody again hired Pectol to represent him, and paid him an additional $10,000. Moody, who was serving time in the Sullivan County jail for a state misdemeanor charge, had little to no contact with Pectol. In January of 1994, Pectol advised Moody that he should plead guilty to the indictment because there was no way to overcome the self-incriminating statements Moody had made during his voluntary FBI interviews. Two of Moody's co-defendants had also pleaded guilty to the cocaine conspiracy. Moody entered into a plea agreement with the government, pleading guilty to the § 846 cocaine conspiracy.

Prior to sentencing, Moody replaced Pectol with attorney David Beck. Given the increased drug quantity now attributable to the conspiracy, the Sentencing Guidelines range for his conviction was from 235 to 293 months of imprisonment. At sentencing, the government sought a downward departure for a sentence of 168 months of imprisonment, stating that the information Moody had given "assisted the United States in framing the indictment in this matter and in identifying the various players and their roles." The government also credited Moody with providing information after he gave his plea that was useful in its indictment of other individuals. The district court granted the motion for downward departure, and imposed a sentence of 120 months of imprisonment, five years supervised release, and a special assessment of $50. Following sentencing, Moody continued to cooperate with the government, agreeing to testify against other conspirators and actually twice testifying for the government in its case against the Florida supplier. Moody did not file a direct appeal.

Moody filed a motion to vacate, set aside, or correct his sentence with the district court pursuant to 28 U.S.C. § 2255, alleging that he was deprived of his constitutional rights by

appropriately be considered to be parts of the trial itself"). The criminal justice system has and is changing so that defendants now face critical stages of their prosecutions prior to indictment. The Sixth Amendment's underlying purpose is to protect defendants in critical stages of their prosecution. Thus, the Sixth Amendment should guarantee the right to counsel during preindictment plea negotiations. Precedent, however, prevents me from endorsing this position which logic demands.

I would urge the Supreme Court to reconsider its bright line test for attachment of the Sixth Amendment right to counsel enunciated in *United States v. Kirby*, 406 U.S. 682 (1972), and *United States v. Gouveia*, 467 U.S. 180 (1984).

reasons—greater control over the eventual sentence. Gardner and Rifkind, *supra*, at 16. For example, plea bargains (pre- and postindictment) can stipulate both the quantity of a controlled substance for which the defendant will be held accountable and the "relevant conduct" that the court may consider during sentencing. Both of these factors can play a major role in determining the eventual sentence of a defendant who, like Mr. Moody, is charged with conspiracy to distribute illegal drugs.

The incentives to bargain over charges and facts only add to the already abundant pressure to bargain with prosecutors as soon as possible in drug conspiracy cases. In practical terms, drug conspiracy cases have become a race to the courthouse. When a conspiracy is exposed by an arrest or execution of search warrants, soon-to-be defendants know that the first one to "belly up" and tell what he knows receives the best deal. The pressure is to bargain and bargain early, even if an indictment has not been filed.

To the extent that preindictment plea bargaining undermines the intent of Congress as expressed in the Guidelines, it is not to be condoned. Regardless of its virtue, such bargaining does occur and will likely continue due to its advantages for both prosecutors and defendants. While preindictment plea bargaining continues, it remains a perilous encounter for defendants. Defendants, or—more formally—potential defendants, are faced with the loss of liberty and property. They are faced with a complicated procedural system and a more knowledgeable adversary. *Cf. Gouveia*, 467 U.S. at 189. In short, these defendants need and should be entitled to counsel in order to navigate these troubled waters.

The Sixth Amendment right to counsel historically has evolved to meet the challenges presented by a changing legal paradigm. *See Ash*, 413 U.S. at 310 (noting that the extension of the Sixth Amendment right to counsel resulted from "changing patterns of criminal procedure and investigation that have tended to generate pretrial events that might

the ineffective assistance of counsel. Moody attacked the conduct of Pectol during his first plea negotiation and the failure of Beck to object to the district court's reliance on certain relevant conduct information at sentencing.

The district court held an evidentiary hearing on the § 2255 motion. In an order dated February 6, 1998, the district court found that Pectol had provided ineffective assistance to Moody during plea negotiations in early 1993; that but for this ineffective assistance, Moody would not have rejected the government's first offer of a plea agreement; and that Moody had suffered prejudice by his subsequent exposure to a substantially higher sentence.[2] The district court held that the appropriate remedy for this violation was to resentence him in accordance with the original plea agreement. The government filed a motion for reconsideration on the grounds that the Sixth Amendment right to counsel does not apply to pre-indictment negotiations.

Upon reconsideration, the district court affirmed its conclusion that the Sixth Amendment right to counsel did apply in this case, and denied the government's motion. The district court held another evidentiary hearing, and resentenced Moody to a term of five years of imprisonment. The government appealed to this Court.

---

[2]The district court found that by the time the government made its five-year offer, Moody had revealed that the conspiracy transported at least twelve kilograms of cocaine, and that these admissions alone had exposed him to at least a ten-year mandatory sentence. The district court further found that by his admissions, Moody had confessed to more than twenty-four times the amount of cocaine necessary to fall within a five year sentencing range.

## II.

In this appeal, the United States challenges only two of the district court's rulings. First, the government attacks the district court's decision to deny its motion for reconsideration on the grounds that the Sixth Amendment right to counsel did not attach during Moody's plea negotiations with the government. Second, the government attacks the district court's decision to impose the original five-year plea agreement as a remedy for the ineffective assistance of counsel. The government does not appeal the finding of the district court that Pectol provided ineffective assistance of counsel to Moody under the two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984), and therefore, we do not address that issue.[3]

Whether the Sixth Amendment right to counsel attaches in pre-indictment plea negotiations is a question of law that we review *de novo. See United States v. Latouf*, 132 F.3d 320, 330 (6th Cir. 1997); *United States v. Doherty*, 126 F.3d 769, 777-78 (6th Cir. 1997).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Courts recognize that the Sixth Amendment right to counsel rests on the nature of the confrontation between defendant and government. The Supreme Court has noted that the "core purpose" of the Sixth Amendment right to counsel is to guarantee assistance at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Ash*, 413 U.S. 300, 309 (1973). The Supreme Court has consistently held that an accused has the right to the effective assistance of counsel at the "critical stages" in the criminal justice process. *United States v. Wade,* 388 U.S. 218, 224 (1967); *see Maine*

---

[3]We note, however, that in light of our ruling as set forth in this opinion, the government's failure to appeal the district court's ruling as to Pectol is of no consequence.

pleas relative to the number of overall cases and the number of convictions has risen during the Guidelines era.[2] The Guidelines' role in this overarching trend, although not irrelevant, is immaterial. What is material, however, is the Guidelines' role in pressuring prosecutors and defendants to engage in plea bargaining ever earlier in the criminal process. As early as 1992 commentators noted that the Guidelines provide an incentive to engage in pre-indictment plea bargaining. *See* David N. Yellen, *Two Cheers for a Tale of Three Cities*, 66 S. Cal. L. Rev. 567, 569-70 (1992); William L. Gardner, David S. Rifkind, *A Basic Guide to Plea Bargaining* 7-SUM Crim. Just. 14, 16 (1992). Some studies indicate that a considerable amount of preindictment plea bargaining already occurs. *See* Yellen at 569.

Under the Guidelines, both defendants and prosecutors benefit from engaging in such bargaining. Preindictment plea bargaining over charges and facts provides Assistant United States Attorneys ("AUSAs") enormous discretion because such bargaining is much less susceptible to review by supervisors or courts. *See* Yellen, *supra*, at 569-70. Through such bargaining, AUSAs can more effectively determine the potential sentence for a defendant. *See id.*; Gardner and Rifkind, *supra*, at 16. By agreeing on the charges to be filed against the defendant, the prosecutors avoid having to draw both the court's and the probation officer's attention to facts relevant to other (potential) charges not pleaded to which might require higher sentencing levels under real offense sentencing. *See* Yellen, *supra*, at 569-70. Defendants also favor preindictment plea negotiations for basically the same

---

bargaining.

[2]In 1988, 1989, and 1990 the percentage of convictions obtained by pleas did decrease each year from a high of 87.479 in 1987 to a low of 86.575 in 1990. As noted above, however, since 1990, the percentage of convictions obtained by pleas has increased every year. This eight year increase is the longest span of continual yearly increases in percentage of convictions by pleas since at least 1945. *See Sourcebook* [Online], Table 5.21.

*Richardson*, 397 U.S. 759 (1970), the Court indicated that a defendant had the right to effective assistance of counsel in his decision to plead guilty. Similarly, in *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court indicated that a defendant had the right to effective assistance of counsel during the plea process. Finally, the Sixth Circuit made clear that Sixth Amendment protections also extend to defendants who decide to reject a plea agreement and stand trial. *See Turner v. Tennessee*, 858 F.2d 1201, 1205 (1988), *vacated on other grounds*, 492 U.S. 902 (1989). Federal courts have left no doubt about the importance of plea bargaining in our system.

What precedent does not do and, thus, constrains us from doing is formally recognizing that preindictment plea bargains are just as critical as postindictment plea bargains. Yet, the Federal Sentencing Guidelines have substantially increased the importance of preindictment plea bargaining. In terms of percentages, the number of pleas continues to rise. Each year since 1990 the percentage of all convictions represented by pleas of guilty or nolo contendere has increased. *See* Kathleen Maguire and Ann L. Pastore, eds. (1999) *Sourcebook of Criminal Justice Statistics 1998* [Online], Table 5.21(available at http://www.albany.edu/sourcebook) (visited 11 January 2000). In 1990, 40,452 people pleaded guilty or nolo contendere; in 1998, 56,256 people so pleaded. These numbers represent 86.575% and 93.940% of all convictions during those respective years. The vast majority of these pleas are the products of plea agreements. *See* Stith and Cabranes, *supra*, at 130.

The Guidelines may or may not have an effect on the trend of increasing pleas and the concomitant increase in importance of plea bargains.[1]  Certainly the percentage of

---

[1] It is worth noting that 1948-1952 and 1964-1965 are the only other consecutive years in which pleas accounted for more than 90% of convictions. Additionally, 1951 had the highest percentage of all cases decided by pleas at 83.411%. *See Sourcebook* [Online], Table 5.21. Thus, factors other than the Guidelines could (and probably do) favor plea

---

*v. Moulton*, 474 U.S. 159, 170 (1985). That right has been extended to certain pretrial proceedings that "might appropriately be considered parts of the trial itself," when the defendant is "confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." *Ash,* 413 U.S. at 310. As the Court recognized in *Wade*, "today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality." 388 U.S. at 224. In reliance upon this line of reasoning, the district court concluded that the plea negotiations between Moody and the government in February and March of 1993 were a "critical stage" of the proceedings against him, and that therefore Moody possessed a Sixth Amendment right to counsel when he consulted Pectol for advice on whether to accept the government's offer. Although logic, justice, and fundamental fairness favor the district court's position, more recent Supreme Court and Sixth Circuit cases have interpreted these principles to find that "critical stages" of criminal proceedings begin only after the initiation of formal judicial proceedings.

The Supreme Court and this Circuit have reduced the Sixth Amendment right to counsel to a bright line test; the Supreme Court has identified with particularity the stages of a criminal proceeding which are "critical" and thus implicate the right to counsel. As was noted in *United States v. Gouveia,* the Court has now adopted a stance that "foreclose[s] the possibility that the right to counsel might under some circumstances attach prior to the formal initiation of judicial proceedings." 467 U.S. 180, 193 (1984) (Stevens, J., concurring). In *Kirby v. Illinois*, 406 U.S. 682, 688 (1972), a plurality of the Supreme Court recognized that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." In *Gouveia*, the Court reaffirmed this bright line test, holding that "the right to counsel does not attach until the initiation of adversary judicial proceedings" such as "formal charge, preliminary hearing, indictment, information, or arraignment." 467 U.S. at 188 (citing *Kirby*, 406 U.S. at 688-

89).  The Court continued, "[i]t is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of the government and defendant have solidified.'"  *Id.* at 189 (citing *Kirby*, 406 U.S. at 689).

Similarly, in *Moran v. Burbine*, 475 U.S. 412, 430 (1986), the Supreme Court stated that the Sixth Amendment right to counsel "becomes applicable only when the government's role shifts from investigation to accusation."  The Court continued, stating that "looking to the initiation of adversary judicial proceedings, far from being mere formalism, is fundamental to the proper application of the Sixth Amendment right to counsel."  *Id.* at 431.  The Court in *Moran* rejected arguments that confessions elicited during police interrogation about crimes not yet charged may well seal a suspect's fate, and therefore, the need for an advocate is great, and noted that it had rejected such arguments before.  *See id.* at 431-32*; compare Kirby*, 406 U.S. at 682 (no Sixth Amendment right to counsel in a pre-indictment line-up); *and Hoffa v. United States*, 385 U.S. 293, 308 (1966) (no Sixth Amendment right to counsel attaches for statements made post-indictment about a separate uncharged offense); *with United States v. Wade*, 388 U.S. 218, 226-27 (1967) (Sixth Amendment right to counsel attaches to post-indictment line-up); *and Massiah v. United States*, 377 U.S. 201, 205-06 (1964) (Sixth Amendment right to counsel attaches to post-indictment statements about offense with which defendant is charged).

The Supreme Court's holding that the Sixth Amendment right attaches only "at or after the initiation of judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," *Kirby*, 406 U.S. at 689, is a bright line test; it is a mandate  that "the Sixth Amendment right to counsel does not attach until after the initiation of formal charges." *Burbine*, 475 U.S. at 431.  In light of the Supreme Court's stance on this issue, it is beyond our reach to modify this rule, even in this case where the facts so clearly demonstrate that the rights protected by the Sixth Amendment are endangered.

_____

**CONCURRENCE**

_____

WISEMAN, District Judge, concurring.  I concur in Judge Clay's excellent opinion in all respects.  As Judge Clay makes clear, justice would be better served if Mr. Moody could be given the benefit of the bargain he rejected due to the ineffective assistance of his counsel.  Yet, the rule of law—the greater good of stability within the law—requires that we follow the trail blazed by the Supreme Court and hold that without the formal initiation of adversarial proceedings, Mr. Moody was not constitutionally entitled to the effective assistance of counsel under the Sixth Amendment.

I write separately only to emphasize the pressures that the Federal Sentencing Guidelines have brought to bear on the criminal justice system and why such pressures make our rigid application of Supreme Court precedent a reluctant application.  Numerous commentators have observed and written on the complexity of the Sentencing Guidelines, so there is no need to do so here.  Likewise, there is little need to comment on the discretion the Guidelines provide federal prosecutors.  Thus, I will limit my comments to how the Guidelines pressure the criminal procedural system towards preindictment plea bargaining.

Plea bargaining is central to federal criminal law.  *See, e.g.*, Kate Stith and José A. Cabranes, *Fear of Judging* 130 (1998).  By extending the protections of the Sixth Amendment right to counsel to plea negotiations, federal courts have recognized such encounters as critical pretrial proceedings where the defendant is confronted by not only the procedural system but also a learned and experienced adversary, *cf. United States v. Gouveia*, 467 U.S. 180, 189 (1984) (citing *United States v. Wade*, 388 U.S. 218 (1967); *United States v. Ash*, 413 U.S. 300 (1973)).  In *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961), the Supreme Court noted that a defendant requires the presence of counsel to plead intelligently.  In *McMann v.*

because the government had not yet filed formal charges. We are faced with the ponderable realization that this is an occasion when justice must of necessity yield to the rule of law, and therefore we must **REVERSE** the district court's order and reinstate the original sentence.

Although Moody was faced with an expert prosecutorial adversary, offering him a plea bargain which he needed legal expertise to evaluate and which would have constituted an agreement if accepted by him despite the lack of formal charges, and although by offering the specific deal the Assistant United States Attorney was committing himself to proceed with prosecution, we must uphold the narrow test of the Supreme Court. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982)("But unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.").

Indeed, this Court has long recognized that "the Sixth Amendment right to counsel does not attach until adversary judicial proceedings have commenced." *United States v. Howard,* 752 F.2d 220, 226 (6th Cir. 1985), *vacated on other grounds,* 770 F.2d 57 (6th Cir. 1985). We reiterated more recently that "the Sixth Amendment right to counsel attaches only after judicial proceedings have been initiated against a defendant," *United States v. Myers,* 123 F.3d 350, 358 (6th Cir. 1997), and found that an unindicted defendant who voluntarily spoke with agents was an "uncharged person" without the right to effective assistance of counsel. *United States v. Latouf,* 132 F.3d 320, 330 (6th Cir. 1997).

More specifically, this Court has rejected the position taken by the district court in this case. In *United States v. Sikora,* 635 F.2d 1175 (6th Cir. 1980), this Court summarily concluded that the defendant's right to counsel did not attach during pre-indictment plea negotiations. *Id.* at 1175-76 (citing *Massiah*, 377 U.S. at 201, and *Brewer v. Williams*, 430 U.S. 387 (1977). In a well-reasoned dissent, Judge Wiseman, sitting by designation, observed:

The Court has extended the right in new contexts that present the same dangers that gave rise to the right originally, those dangers being confrontation with the procedural system, the expert prosecutor, or both. In the plea bargaining context, the accused is presented with

both of these dangers, and therefore those persons who enter the plea bargaining process before formal charges have been filed should have the protection of the Sixth Amendment. . . . [W]hen the government begins plea negotiations with a citizen who has not been formally charged, he is just as surely faced with the 'prosecutorial forces of organized society' as the defendant who has been formally introduced into the system.

*Sikora,* 635 F.2d at 1182. Although we find the dissent's reasoning convincing, we must follow the precedent of the *Sikora* majority. This panel may not overrule the decision of another panel; the earlier determination is binding authority unless a decision of the United States Supreme Court mandates modification or this Court sitting *en banc* overrules the prior decision. *See Salmi v. Secretary of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

Here, there is no question that at the time Moody consulted Pectol about the plea offer, the government had not instituted formal adversary proceedings against him; nor is there any dispute that Pectol's behavior met the standard for ineffective assistance of counsel. Similarly, it is uncontested that the Assistant United States Attorney presented to Moody a definite plea bargain which offered a lighter sentence in exchange for Moody's continued cooperation. This was not a casual conversation about a potential plea agreement, but a formalized offer for a specific term of imprisonment in exchange for Moody's cooperation. In this situation, the onset of plea negotiations begun by the government prior to indictment raises the specter of the unwary defendant agreeing to surrender his right to a trial in exchange for an unfair sentence without the assurance of legal assistance to protect him. As the Supreme Court recognized, "only the presence of counsel [permits the] accused to know all the defenses against him and to plead intelligently." *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961). But for the delay of the prosecution in filing charges, Moody clearly would have been entitled to the effective assistance of counsel. Under the Supreme Court's and our Circuit's approach, he is not – even

though the point at which the actions of Moody's counsel fell below an objective standard of reasonableness was no less a "critical stage" of the proceedings against him.

We believe it to be a mere formality that the government had not indicted Moody at the time that it offered him a deal and invited him to seek the assistance of counsel. Under these circumstances, it would indeed "exalt form over substance to make the right to counsel . . . depend on whether at the time of the interrogation, the authorities had secured a formal indictment." *Escobedo v. Illinois,* 378 U.S. 478, 486 (1964). However, *Escobedo* has since been recognized by the Supreme Court to involve a Fifth Amendment right to counsel — a right derived from the privilege against self-incrimination — and not a statement on the Sixth Amendment right to counsel, and therefore *Escobedo* cannot buttress Moody's claim.[4] *See United States v. Gouveia*, 467 U.S. 180, 188 n.5 (1984); *Rhode Island v. Innis*, 446 U.S. 291, 300 n.4 (1980).

We do not favor this bright line approach because it requires that we disregard the cold reality that faces a suspect in pre-indictment plea negotiations. There is no question in our minds that at formal plea negotiations, where a specific sentence is offered to an offender for a specific offense, the adverse positions of the government and the suspect have solidified. Indeed, it seems a triumph of the letter over the spirit of the law to hold that Moody had no right to counsel in his decision to accept or deny the offered plea bargain only

---

[4]Although Moody argues that, in the alternative, this Court should affirm the district court on the grounds that he suffered a violation of his Fifth Amendment right to due process here, we are unpersuaded. A party seeking relief on that basis must demonstrate that the government compelled his testimony, and must show the presence of custody and interrogation. *See United States v. Latouf,* 132 F.3d 320, 330 (6th Cir. 1997). There is no dispute that Moody volunteered his statements to the FBI; he was therefore not compelled by the government to do anything. Moreover, Moody offers no support for his broad contention that "due process requires that effective counsel be provided during plea negotiations that occur before indictment."