RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JOHN R. TURNER,

> *Petitioner-Appellant,*

*v.*

No. 15-6060

UNITED STATES OF AMERICA,

> *Respondent-Appellee.*

─────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
Nos. 2:08-cr-20302-1; 2:12-cv-02266—Samuel H. Mays Jr., District Judge.

Argued: October 20, 2016

Decided and Filed: February 15, 2017

Before: MERRITT, BATCHELDER, and ROGERS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Robert L. Hutton, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellant. Murrell G. Martindale, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Robert L. Hutton, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellant. Murrell G. Martindale, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

─────────────

## OPINION

─────────────

MERRITT, Circuit Judge. This case arises because our system of federalism allows dual prosecutions by both state and federal sovereigns for one criminal episode without the protection

of double jeopardy. *Abbate v. United States*, 359 U.S. 187 (1959). This appeal presents the question of whether the Sixth Amendment right to counsel may attach before formal charges are filed in federal court. Defendant John Turner was arrested in Memphis by officers working with a joint federal-state anticrime task force. He was charged with aggravated robbery pursuant to Tennessee law, and retained counsel to represent him. During the pendency of the state proceedings, the United States Attorney's Office and Turner's attorney in the state proceeding discussed settlement regarding forthcoming federal charges arising out of the same conduct that led to the state charges. Turner rejected a federal plea offer regarding the as-yet uncharged federal case, but he subsequently pled guilty to the federal charges pursuant to a less-favorable plea agreement. He filed a motion pursuant to 28 U.S.C. § 2255 to vacate or set aside his federal conviction based on ineffective assistance of counsel during plea negotiations concerning the federal charges. The government argued that because Turner had no Sixth Amendment right to counsel regarding plea negotiations conducted prior to the filing of formal charges against him, counsel could not be constitutionally ineffective. Following Sixth Circuit precedent holding that the Sixth Amendment right to counsel does not attach before formal charges are filed, the district court denied the motion without reaching the merits of the ineffective assistance of counsel claim. Because our precedent requires us to do so, we affirm the judgment of the district court.

## I.

The relevant facts are undisputed. Turner robbed four Memphis-area businesses at gunpoint on October 3, 2007. He was arrested by a Memphis police officer working as part of the "Safe Streets Task Force," a joint federal-state task force created to target and prosecute individuals involved in serious crimes.[1] The complaint was presented to a Shelby County General Sessions judge who signed the arrest warrant. Turner was arrested by state officers, some of whom were assigned to the task force.

---

[1]The task force is the result of a Memorandum of Understanding between the FBI, the Collierville, Tennessee, police department, the Memphis police department and the Shelby County, Tennessee, Sheriff's Office. Officers from each of the four law enforcement agencies staff the task force. The Memorandum of Understanding provides that "the criteria for determining whether to prosecute a particular violation in state or federal court will focus upon achieving the greatest overall benefit to law enforcement and the jurisdiction will be resolved through discussion among all investigative agencies and prosecutive [sic] entities having an interest in the matter." Memorandum of Understanding at ¶ IV.D.

Turner retained attorney Mark McDaniel.  Several months later, in February 2008, a grand jury in Shelby County returned three indictments charging Turner with aggravated robbery under Tennessee law.  The fourth indictment, also for aggravated robbery, was returned in June 2008.  Turner was then offered a plea deal on the state charges that would result in a negotiated sentence of eight or nine years.  The state charges were resolved through the plea agreement in March 2009 and are not at issue in this appeal.

Although an exact date is not given by the parties, at some point during the summer of 2008 while McDaniel represented Turner on the state charges, the state district attorney told McDaniel that the United States Attorney's Office planned to bring federal charges against Turner and told McDaniel to call Assistant United States Attorney Tony Arvin.  Arvin told McDaniel that the United States planned to bring federal charges against Turner under the Hobbs Act, 18 U.S.C. § 1951, which criminalizes interference with commerce by threats or violence, and for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) for each of the four robberies.  On the federal firearm charges alone Turner faced a mandatory minimum of 82 years.  Assistant United States Attorney Arvin told McDaniel that he would offer Turner a sentence of 15 years on the federal charges on the condition that Turner accept the offer before the federal indictment was returned.

McDaniel contends that he relayed the federal plea deal correctly and timely to Turner, but Turner did not want to take it.[2]  McDaniel claims he spoke to Turner numerous times over the summer of 2008, and Turner told him he understood the federal charges against him and understood that they were separate from the state charges.  McDaniel says he met with Turner on July 28, 2008, to reiterate to Turner that the United States Attorney was waiting for an answer and that the plea offer of 15 years would expire shortly after September 15, 2008, when the charges would be presented to a federal grand jury.  McDaniel says that Turner told him that 15 years was too much time for what he did.  Turner disputes McDaniel's version of the events, but he does not dispute that he did not accept the plea offer before the federal indictment was returned.  Turner then discharged McDaniel and hired a new attorney.  A new Assistant United

---

[2]The district court granted the government's motion to release McDaniel from the attorney-client privilege only to the extent necessary to respond to Turner's § 2255 motion.

States Attorney took over Turner's case and the best deal that Turner's new attorney could negotiate was a 25-year sentence. Turner accepted the plea deal with a sentence of 25 years, pleading guilty to four counts of robbery affecting commerce in violation of 18 U.S.C. § 1951, and one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He was sentenced to 25 years. He waived his right to direct appeal on the federal charges pursuant to the terms of the plea agreement.

In 2012, Turner filed a Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The sole issue presented was whether defense counsel McDaniel rendered ineffective assistance of counsel during the plea negotiations on the federal charges. The district court denied the motion without holding an evidentiary hearing because it did not reach the factual question of whether McDaniel was ineffective. Instead, it decided the issue on the purely legal question of whether Turner's Sixth Amendment right to counsel on the federal charges had attached at all when Turner rejected the government's plea offer and found that it had not.

## II.

On appeal, Turner raises two issues: (1) whether his Sixth Amendment right to counsel attached during plea negotiations that occurred prior to his federal indictment, and (2) whether the district court should have granted an evidentiary hearing to develop this claim.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Whether the Sixth Amendment right to counsel attaches during preindictment plea negotiations is a question of law we review *de novo*. *United States v. Moody*, 206 F.3d 609, 612 (6th Cir. 2000).

## A. <u>Supreme Court Precedent</u>

The Sixth Amendment guarantees a right to counsel at critical stages of a criminal proceeding. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Some pretrial proceedings qualify as critical stages, but only if formal charges have been filed. *See Missouri v. Frye,* 566 U.S. 133,

(2012) (postindictment plea negotiations); *United States v. Wade*, 388 U.S. 218 (1967) (postindictment lineups); *Massiah v. United States*, 377 U.S. 201 (1964) (postindictment interrogations). The Supreme Court has not squarely addressed whether a defendant has the right to counsel during preindictment plea negotiations, but it has consistently drawn the line at the time of filing of formal charges, holding that the right to counsel attaches only after the formal initiation of judicial proceedings, relying on a purely chronological, bright-line test. *See Moran v. Burbine*, 475 U.S. 412 (1986) (rejecting claims that Sixth Amendment right to counsel should attach when confessions during police interrogation about crimes not yet charged may well seal suspect's fate); *United States v. Gouveia*, 467 U.S. 180, 192-93 (1984) (no right to counsel during preindictment administrative detention of inmates); *Kirby v. Illinois*, 406 U.S. 682, 689-90 (1972) (plurality opinion) (refusing to extend the right to counsel during preindictment police lineup).

Despite the Court's recognition that certain proceedings "might well settle the accused's fate and reduce the trial itself to a mere formality," *Wade*, 388 U.S. at 224, the bright-line test persists. In addition, the Court has repeatedly recognized that the transition from investigation by law enforcement to accusations by a prosecutor is a critical juncture. *See Gouveia*, 467 U.S. at 188-89 (recognizing the importance of counsel at "critical" proceedings, including "when the accused is confronted with both the intricacies of the law and the advocacy of the public prosecutor"); *Wade*, 388 U.S. at 227-28 (counsel attaches at "critical" stages of the criminal process). Recognizing that plea bargains have "become so central to the administration of [the] criminal justice system," the Court held in two companion cases that a defendant is entitled to the effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 132 S. Ct. at 1407 (defense counsel has a duty to communicate formal offers from the prosecution); *see also Lafler v. Cooper*, 566 U.S. 156 (2012) (defendant was entitled to relief when he rejected a plea offer based on counsel's incorrect advice concerning the federal sentencing guidelines). While *Frye* and *Lafler* recognize that plea negotiations are central to the American system of criminal justice, the plea negotiations in question occurred after indictments had been filed and the Court did not consider the question of whether the right to counsel attached in preindictment plea negotiations.

B. <u>Sixth Circuit Precedent</u>

Unlike the Supreme Court, our court has addressed the precise question of whether the right to counsel attaches in plea negotiations occurring before the filing of formal charges, and it has adhered to the bright-line rule that the right attaches only after formal charges have been filed. In *United States v. Moody*, 206 F.3d 609 (6th Cir. 2000), defendant Moody was part of a conspiracy to distribute cocaine in Florida and Tennessee. The FBI conducted six interviews with Moody while he was unrepresented by counsel during which he made several incriminating statements. A federal prosecutor was present for two of the interviews. The government offered him a plea deal limiting his sentence to no more than five years if he would plead guilty and continue to cooperate with the government. Moody then retained counsel who contacted the government and rejected the plea offer without asking about the substance of the interviews and having no knowledge of the self-incriminating statements Moody had made during the interviews. Moody was then indicted on charges that exposed him to far more than five years in jail. The same attorney then advised him to plead guilty due to the incriminating statements Moody had made. Moody pled guilty and received a ten-year sentence, double the original maximum sentence offered. Moody then filed a motion to vacate his sentence based on ineffective assistance of counsel arising from the advice to reject the original plea offer with the five-year maximum sentence. The district court granted the motion and resentenced Moody to five years.

Our court reversed the district court and found that, although plea negotiations were a critical stage of the proceedings, precedent required it to hold that the right to counsel had not attached. The *Moody* court reversed with regret, calling the bright-line test it was required to follow a "triumph of the letter over the spirit of the law." 206 F.3d at 616. The *Moody* opinion acknowledged that the prosecutor's preindictment plea negotiations "raise[d] the specter of the unwary defendant agreeing to surrender his right to a trial in exchange for an unfair sentence without the assurance of legal assistance to protect him." *Id.* at 615. The opinion also acknowledged that by offering a plea deal, the prosecutor had committed himself to prosecute Moody. *Id.*

Our court reaffirmed its reliance on the bright-line test recently in *Kennedy v. United States*, 756 F.3d 492 (6th Cir. 2014). In that case, the defendant argued that the Supreme Court's recent decisions in *Missouri v. Frye* and *Lafler v. Cooper,* which held that a defendant has a right to the effective assistance of counsel during plea negotiations, reopened the question of when the right to counsel attaches if plea negotiations occur. Following *Moody*, we applied the bright-line test, rejecting Kennedy's argument that *Lafler* and *Frye* indicated that the Court was backing away from the bright-line test regarding when the right to counsel attaches. But, as noted above, the *Lafler* and *Frye* plea negotiations occurred after formal charges had been filed and the Court did not discuss the issue of when, chronologically, the right to counsel attached, so we did not find any change in the law with regard to the right to counsel in preindictment plea negotiations based on their holdings. *Kennedy*, 756 F.3d at 493-94.

Our sister circuit courts are split as to whether the Sixth Amendment right to counsel attaches in preindictment plea negotiations. At least five other circuit courts follow the bright-line test with respect to the right to counsel before formal charges are filed, and four courts allow a rebuttable presumption to the argument that the right to counsel attaches only after formal charges are filed. For a discussion of cases from these circuits, as well as a discussion of the changes to modern criminal proceedings that favor a change in the rule, *see* Steven J. Mulroy, "The Bright Line's Dark Zone: Pre-Charge Attachment of the 6th Amendment Right to Counsel," 92 Wash. L. Rev. ___ (2017) (forthcoming) (available electronically at http://dx.doi.org/10.2139/ssrn.2821179 or on the Sixth Circuit Public Docket Sheet, *Turner v. United States*, No. 15-6060 (6th Cir. Sept. 6, 2016), ECF No. 28); s*ee also* Brandon K. Breslow, Signs of Life in the Supreme Court's Uncharted Territory: Why the Right to Effective Assistance of Counsel Should Attach to Pre-Indictment Plea Bargaining, 61-NOV Fed. Law. 34 (Oct./Nov. 2015).

**III.**

In this case, Turner was already represented by counsel on state charges that had been previously filed. The federal prosecutor told Turner's attorney that federal charges arising out of the same incidents would be forthcoming—there was no doubt that the process had turned adversarial between the United States and Turner. Indeed, the federal prosecutor asked the state

district attorney to have McDaniel, Turner's lawyer in the state proceedings, contact the United States Attorney's office to discuss a plea agreement concerning forthcoming federal charges, so the United States Attorney's office considered Turner to be represented by counsel.  An offer concerning the federal charges was extended to McDaniel to pass on to Turner.  The offer was contingent on Turner accepting it *before* the indictment was returned.  Under these plea agreement terms, Turner could never challenge his attorney's effectiveness because the negotiations had to take place prior to the filing of formal charges or the offer would be withdrawn.

Turner argues that *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006), implicitly made an exception to the bright-line rule in *Moody* in circumstances similar to the ones in this case. Defendant Morris was investigated and arrested by a state-federal joint task force in Michigan on firearm and drug-related charges.  He was initially charged in Michigan state court and an attorney was appointed to represent him on those charges.  The attorney advised Morris on the consequences of the state plea offer and possible forthcoming federal charges, but she erroneously advised him on the federal sentencing guideline range for the federal crimes.  Unlike this case, the state plea deal included dropping the federal charges if Morris accepted the offer, so the choice was between federal and state prosecution.  Morris rejected the state plea offer because his attorney incorrectly advised him that the potential sentencing range for the federal charges might be lower.  He decided to be prosecuted in federal court and received a federal sentence that was double what he would have received in state court.  After being indicted in federal court, Morris sought to dismiss the federal indictment and to be sentenced in the state court based on the attorney's incorrect advice on the federal sentencing range.  The relief was granted and this court affirmed, all without mentioning *Moody*.

This case differs from *Morris* because the state and federal governments pursued *separate* prosecutions against Turner that, although arising out of the same conduct, were independent of each other.  This was not an either-or choice for Turner as it was for defendant Morris.  Turner had an attorney for the state prosecution who was advising him on those charges. The attorney's advice in the state-court proceeding is not at issue here.  But Turner argues, with some force, that the circumstances in *Morris* point to an implied exception to the bright-line rule

that formal charges must be filed before the right to counsel attaches, at least where federal and state prosecutions are related. *Morris* found it unfair that a defendant would be offered a plea agreement by the government and simultaneously deny him the right to effective counsel in order to properly evaluate that plea agreement. *Morris*, 470 F.3d at 600. That same idea applies here: the federal government made Turner a plea offer through his acknowledged attorney, but now argues that because he did not yet have the Sixth Amendment right to counsel regarding those as-yet-unfiled federal charges, any ineffectiveness on the part of counsel is of no matter.

In adversarial plea negotiations like Turner's, a defendant's right to trial and to contest the sentence are often at stake. It makes plea negotiations a "critical stage" of the criminal process. Whether they occur before or after the filing of formal charges, it is undisputed that the plea negotiation process is adversarial by nature and the average defendant is ill equipped to navigate the process on his own. The current bright-line rule does not allow for the realities of present-day criminal prosecutions and their heavy reliance on plea bargaining. Defendants face an increasing number of federal-state prosecutions that blur the lines of demarcation on exactly when charges are filed for purposes of the Sixth Amendment right to counsel. Defendants also must navigate the complex web of federal sentencing guidelines, computations that confound even those who work with them often.

As we did in *Moody* sixteen years ago, we restate here the well-reasoned words of Judge Wiseman, sitting by designation, when he observed in dissent thirty-five years ago:

> The Court has extended the right in new contexts that present the same dangers that gave rise to the right originally, those dangers being confrontation with the procedural system, the expert prosecutor, or both. In the plea bargaining context, the accused is presented with both of these dangers, and therefore those persons who enter the plea bargaining process before formal charges have been filed should have the protection of the Sixth Amendment. . . . [W]hen the government begins plea negotiations with a citizen who has not been formally charged, he is just as surely faced with the "prosecutorial forces of organized society" as the defendant who has been formally introduced into the system.

*Moody*, 206 F.3d at 614-15 (quoting *United States v. Sikora*, 635 F.2d 1175, 1182 (6th Cir. 1980) (Wiseman, J., dissenting)). Notwithstanding this thoughtful reasoning, we must follow the precedent of *Moody* and *Kennedy*. This panel should not overrule the decision of another panel;

the earlier determination is binding authority unless a decision of the Supreme Court mandates modification or this Court sitting *en banc* overrules the prior decision.  Whether Turner in fact received ineffective assistance of counsel during the preindictment plea negotiations in the federal case against him we do not know, and we cannot reach the question today based on our prior rulings.  We therefore must affirm the district court's judgment that Turner's right to counsel had not attached.

## IV.

Because we adhere to our precedent and find that no right to counsel attaches before the filing of formal charges and because it is undisputed that no formal charges had been filed against Turner when the plea negotiations occurred, an evidentiary hearing would be of no value. We therefore find no error in the district court's decision to deny the motion for an evidentiary hearing.

For the foregoing reasons, the judgment of the district court is affirmed.