**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shawn Tyrone PERCY, Defendant–Appellant.**

No. 99–10488.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 2000

Filed May 11, 2001

Bram Jacobson, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant.

Joseph C. Welty, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

Before: ALDISERT,[1] GRABER and FISHER, Circuit Judges.

FISHER, Circuit Judge:

In this appeal, we are called upon to determine whether a federal agent's interrogation of Shawn Percy violated his Sixth Amendment right to counsel because the interrogation occurred in the absence of counsel, but after Percy's tribal arraignment on charges stemming from the same incident. We hold that the interrogation was proper because, even if Percy's Sixth Amendment right to counsel attached at his tribal arraignment, Percy executed a valid waiver of that right before submitting to questioning by federal agents. We also conclude that Percy's other claims of trial error do not warrant reversal. Accordingly, we affirm the convictions.

## BACKGROUND

Shawn Percy shot and killed a man in Indian country. He then fled to Arizona, but within days was arrested by Sergeant Stephanie Nelson of the Gila River Tribal Police Department who was accompanied by three other tribal officers and three Maricopa County Sheriff's Deputies. Although Sgt. Nelson was cross-certified to act as an agent of both the Bureau of Indian Affairs and Maricopa County, she arrested Percy pursuant to a tribal arrest warrant. Almost immediately after the arrest, however, one of the deputies informed Sgt. Nelson of the existence of a federal warrant for Percy's arrest on a murder charge arising out of the same incident.

Upon learning of the federal warrant, Sgt. Nelson called a tribal prosecutor and asked for advice. The prosecutor informed her that she could bring Percy to the border of the Gila River Tribal Community, where he could be taken into custody on the tribal warrant. Next, Sgt. Nelson contacted FBI Special Agent Kevin Killegrew, who had sworn out the federal criminal complaint against Percy. Agent Killegrew told Sgt. Nelson that she had the choice of either taking Percy to tribal court pursuant to the tribal warrant or arresting him on the federal warrant.

Sgt. Nelson chose to act pursuant to the tribal warrant. She took Percy to the border of the Gila River Tribal Community and turned him over to another Gila River police officer, who executed the tribal arrest warrant and transported Percy to jail. However, despite Sgt. Nelson's apparent efforts to serve both tribal and federal interests faithfully, her actions failed to comply with the statutory mechanism for apprehending and extraditing an individual who is located outside the boundaries of Indian country. Had the proper procedure been followed, Sgt. Nelson, as an Maricopa county official, would have held Percy in custody until the tribe initiated extradition procedures. In this case, the tribe undertook no extradition procedure. Tribal jurisdiction, however, was not compromised by Sgt. Nelson's failure to properly extradite Percy. Once Percy was within the territorial jurisdiction of the Gila River Tribal Court, that court could legally exercise its jurisdiction. *See United States v. Alvarez–Machain,* 504 U.S. 655, 664, 112 S.Ct. 2188 (1992) (noting the longstanding rule that a court may exercise jurisdiction even when a defendant's presence is the result of forcible abduc-

1. The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

tion). Therefore, Percy's detention by the Gila River Tribal Community was legal.

Percy was arraigned in tribal court and entered a plea of not guilty to the killing and a related weapons charge. Percy was not represented by counsel at the proceedings. Tribal law does not require appointment of counsel at arraignment, and Percy did not retain private counsel.[2]

On December 23, 1998, 17 days after Percy was taken into tribal custody, Agent Killegrew visited the tribal jail to interview Percy. Percy still had not taken steps to retain counsel, nor had he expressed a desire for the assistance of counsel. Before the interview, Killegrew orally advised Percy of his *Miranda* rights. Specifically, Killegrew testified that he told Percy he had a right to a lawyer, free of charge; that a lawyer could be appointed for him prior to questioning; and that at any point Percy could stop the interview and Killegrew would obtain a lawyer for him. Percy indicated that he understood his rights, but nonetheless waived them. Percy also executed a written waiver of his *Miranda* rights on an "advice of rights" form in the presence of both Killegrew and Gila River tribal detective Tim Prawdzik. Percy then proceeded to tell Killegrew his version of the events on the night of the killing and revealed to Killegrew the location of the murder weapon. At no time during the interview did Percy request the assistance of counsel.

Percy was transferred to federal custody the next day, December 24, 1998. That same day, he was arraigned in federal court and entered a plea of not guilty to the charges of first degree murder and use of a firearm in a crime of violence.

On March 24, 1999, Percy filed a motion to suppress the statements he made to

Killegrew during the interview in tribal jail, as well as the physical evidence collected as a result of those statements. At the resultant hearing, Percy's court-appointed lawyer told the court that Percy did not dispute that he had waived his *Miranda* rights or that his statement was made voluntarily. After hearing testimony, the district court concluded that "[Percy] did receive his *Miranda* rights from Special Agent Killegrew, and that his statement was knowingly, voluntarily and intelligently made for Fifth Amendment purposes." The district court also concluded that Percy's Sixth Amendment right had not attached at the time of the interview because Percy had not yet been arraigned on federal charges. Accordingly, the district court denied Percy's motion to suppress his December 23 statement to Killegrew.

Percy was tried before a jury. In its case-in-chief, the government called Killegrew to testify about what Percy had told him during the interview in tribal jail. The murder weapon, which had been located as a result of statements made during the interview, was admitted into evidence. Percy took the stand in his own defense. He admitted to the shooting, but claimed he had acted in self-defense and that he had not intended to fire the gun. In response to questions on cross-examination about why he possessed a loaded, sawed-off rifle, Percy testified that he feared for his safety because of a prior incident. When Percy's counsel attempted to elicit the details of the prior incident on redirect, the district court sustained the government's objection to the testimony on the basis of relevance.

At the end of a three day trial, the jury found Percy guilty of second degree murder and use of a firearm in a crime of

---

**2.** The limited right to counsel tribal defendants do enjoy derives from the Indian Civil Rights Act, 25 U.S.C. § 1302, which provides for a right to *retained* counsel only.

violence. Percy is serving a term of 280 months in federal prison, to be followed by 60 months of supervised release. Percy now challenges his conviction on three separate grounds. We examine each of them in turn and find none meritorious.

## STANDARD OF REVIEW

■ We review de novo a district court's denial of a motion to suppress. *United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir.2000). A district court's factual findings are reviewed for clear error. *United States v. Mattarolo*, 209 F.3d 1153, 1155–56 (9th Cir.2000). Its evidentiary rulings during trial are reviewed for an abuse of discretion. *United States v. Ramirez*, 176 F.3d 1179, 1182 (9th Cir.1999). When a defendant raises an issue on appeal that was not raised before the district court, we review only for plain error. Fed. R.Crim.P. 52(b); *United States v. Vences*, 169 F.3d 611, 613 (9th Cir.1999). Whether a waiver of the Sixth Amendment right to counsel was made knowingly and intelligently is a mixed question of law and fact that is reviewed de novo. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc).

## DISCUSSION

### I. Right to Counsel

#### A. Sixth Amendment

■ Percy first argues that the uncounseled statements he made to Agent Killegrew while in tribal jail were obtained in violation of his Sixth Amendment right to counsel. The Sixth Amendment guarantees a criminal defendant "the right . . . to have the Assistance of Counsel for his defence," U.S. const. amend. VI, the right to such counsel attaching "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v.*

*Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion). This Circuit adheres to the bright-line rule that the Sixth Amendment's right to counsel attaches upon the initiation of formal charges. *See United States v. Hayes*, 231 F.3d 663, 675 (9th Cir.2000) (en banc).

■ At the time of his interview with Agent Killegrew, however, Percy had not been arraigned in federal court. Rather, he had been arraigned only in tribal court. It is well established that tribal proceedings do not afford criminal defendants the same protections as do federal proceedings. The protections of the United States Constitution are generally inapplicable to Indian tribes, Indian courts and Indians on the reservation. *See Talton v. Mayes*, 163 U.S. 376, 381–82, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *Tom v. Sutton*, 533 F.2d 1101, 1102–3 (9th Cir.1976). The underlying rationale is that Indian tribes are quasi-sovereign nations. *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 172–73, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). This Circuit has held the Sixth Amendment right to counsel does not apply in tribal court criminal proceedings. *United States v. Ant*, 882 F.2d 1389, 1392 (9th Cir.1989); *Settler v. Lameer*, 507 F.2d 231, 241 (1974). Thus, Percy's Sixth Amendment right to counsel had not attached for the purposes of the *tribal* proceedings flowing from the tribal arraignment.

■ Nonetheless, Percy argues that his tribal arraignment served as the functional equivalent of a *federal* arraignment and, accordingly, asserts that Agent Killegrew, who interrogated Percy after his tribal arraignment, was bound by Percy's Sixth Amendment right to counsel even if tribal officers were not similarly limited. His argument is not without support in the law of this Circuit.

In *Ant,* we reviewed the government's use of a tribal defendant's prior uncounseled guilty plea in tribal court as evidence in a subsequent federal prosecution on charges stemming from the same incident. The tribal court guilty plea was made in conformance with both tribal law and the Indian Civil Rights Act. Nonetheless, we held the guilty plea was inadmissible in the subsequent federal prosecution because the guilty plea was "constitutionally infirm" and would have been inadmissible if made in federal court, because the defendant was not represented by counsel and had not executed a valid waiver of the right to counsel. *Ant,* 882 F.2d at 1393.

Although Percy here challenges the use of his post-tribal-arraignment statements, which were made *out* of court, rather than an uncounseled guilty plea entered *in* tribal court, he asserts that *United States v. Covarrubias,* 179 F.3d 1219 (9th Cir.1999), establishes, by analogy, that his post-tribal-arraignment interrogation also sufficed to trigger the protections of the Sixth Amendment. In *Covarrubias,* the defendant, who was represented by counsel, was arraigned on state charges. A federal agent later interviewed the defendant, outside the presence of counsel, regarding a federal charge that arose out of the same incident. Notwithstanding that the Sixth Amendment right to counsel is generally offense-specific and the defendant had not been indicted on the federal charges, we held that because the federal charges were "inextricably intertwined" with the state charges, the federal agent's interview with the defendant, which took place after his state arraignment, had violated his Sixth Amendment right to counsel. *Id. Covarrubias'* holding, however, has been undermined by the Supreme Court's recent decision in *Texas v. Cobb,* —— U.S. ——, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).[3]

Percy asks us to hold that *Ant* and *Covarrubias* remain viable and that, read together, they establish that federal officers are bound by the protections of the Sixth Amendment during interviews of suspects that occur after tribal arraignment on tribal charges that are "inextricably intertwined" with federal charges. We need not resolve this question because, even if Percy's Sixth Amendment right to counsel had attached, he validly waived those rights.

In *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the Supreme Court held a defendant who has been indicted but who has not yet exercised his right to counsel may waive his Sixth Amendment right to counsel during questioning by executing a valid waiver of his *Fifth* Amendment right to counsel. "As a general matter, then, an accused who is admonished with the warnings prescribed by the Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Id.* at 298, 108 S.Ct. 2389.

In the present case, Percy had not retained counsel, nor did he indicate that he

---

**3.** In *Cobb,* the Court noted:

Some state courts and Federal Courts of Appeals, however, have read into *McNeil [v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)] offense-specific definition an exception for crimes that are "factually related" to the charged offense [citing *inter alia Covarrubias*]. Several of these courts have interpreted *Brewer v.*

*Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)—both of which were decided well before *McNeil*—to support this view, which respondent now invites us to approve. We decline to do so.

*Cobb,* 121 S.Ct. at 1340–41 (footnote omitted).

wanted the assistance of counsel. In such circumstances, *Patterson* holds that Percy could knowingly and intelligently waive his Sixth Amendment right to counsel. *Id.* at 290–93, 108 S.Ct. 2389; *see also United States v. Harrison*, 213 F.3d 1206, 1209 (9th Cir.2000) (noting that, for Sixth Amendment purposes, attachment and invocation are distinct events; a defendant must invoke the right to counsel by hiring a lawyer or asking for appointed counsel). Percy agreed to just such a waiver after Agent Killegrew advised him of his *Miranda* rights; he orally waived his rights, voluntarily signed an advice of rights form and proceeded to tell his story. Accordingly, the use of those statements in his federal trial did not violate the Sixth Amendment.

Given our conclusion that Percy waived his Sixth Amendment right to counsel, we decline to reach the more fundamental question whether federal officers are bound by the protections of the Sixth Amendment during post-tribal-arraignment interviews on federal charges that are "inextricably intertwined" with tribal charges. *See Ashwander v. TVA*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) ("This Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

### B. Rule 5(a)

■ In addition to his Sixth Amendment suppression arguments, Percy also contends that his December 23 statements to Agent Killegrew should be suppressed because they were obtained in violation of Federal Rule of Criminal Procedure 5(a). Under Rule 5(a), an officer arresting a suspect pursuant to a federal warrant must take the suspect to the nearest federal magistrate without unnecessary delay.

Percy argues that Sgt. Nelson failed to comply with Rule 5(a) when she transported him to the Gila River Reservation and, therefore, that suppression is required.

■ When Nelson arrested Percy on December 6, 1998, however, she did so pursuant to a tribal warrant, not a federal warrant. Rule 5(a) applies to nonfederal warrants only "where there is evidence of a 'working arrangement' between the federal and tribal officers to deprive a suspect of federal procedural rights." *United States v. Doe*, 155 F.3d 1070, 1078 (9th Cir.1998) (en banc) (citations omitted). Notwithstanding Percy's arguments to the contrary, the district court found no collusive efforts by Nelson and Agent Killegrew to circumvent Rule 5(a) or other federal procedural rights. Because Percy does not attempt to demonstrate that this factual finding was clearly erroneous, the finding is binding on appeal. *See United States v. Alvarez–Sanchez*, 511 U.S. 350, 360, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994). Accordingly, Rule 5(a) was not implicated when Nelson executed the tribal warrant for Percy's arrest.

Additionally, Percy argues that Rule 5(a) governs his arrest because Sgt. Nelson, as a cross-certified officer of the BIA, was required to arrest him under the federal warrant, not the tribal warrant. Percy offers no authority for this proposition, and we decline to create such a requirement. We therefore affirm the district court's ruling that Rule 5(a) does not require suppression of Percy's statements to Agent Killegrew.

## II. Prior Assault

■ Next, Percy argues the district court erred by failing to allow him to testify to the details of a prior assault in which he claimed to have been beaten, threatened and dumped in the desert by people who had broken into his girlfriend's

house. The prior assault came up on cross-examination, when the prosecutor asked Percy why he owned a loaded, sawed-off rifle. Percy responded that he owned the weapon for personal protection, stating specifically: "There's lots of violence out there, and I don't trust anybody out there after what happened to me a previous time before this. I just don't trust anybody. That's why I keep it." The prosecutor did not challenge the veracity of this testimony. When defense counsel subsequently attempted to elicit from Percy the details of what had happened to him "that previous time," the district court sustained the prosecutor's objection regarding relevance.

Percy contends the district court abused its discretion by refusing to allow him to testify about the details of the prior assault because the government "opened the door" to the testimony by cross-examining him about his reasons for owning the gun. *See United States v. Lujan,* 936 F.2d 406, 411 (9th Cir.1991). Percy's argument is unpersuasive. The district court allowed Percy to testify that he carried a gun because he feared for his safety as a result of an incident that happened in the past— and that was sufficient explanation. The details of the prior incident were irrelevant, especially when Percy's testimony about the existence of the prior incident was unchallenged. Thus, the district court did not abuse its discretion in precluding Percy from testifying regarding the details of the earlier assault.

### III. Prosecutorial Misconduct

Finally, Percy argues that the prosecutor engaged in misconduct by (1) eliciting testimony about Percy's courtroom garb;[4] (2) referring to the rifle's "normal" func-

tioning during closing argument; (3) allowing a tribal police officer and another government witness, Rabago, to allude to the fact that Percy was driving a stolen car at the time of the incident, and (4) arguing that Rabago was not biased, despite his volunteered testimony about Percy's driving a stolen car in contravention of the government's guidance.

 Percy did not object to the questions regarding his courtroom garb at trial, raising the issue for the first time on appeal. Accordingly, the asserted misconduct is reviewed for plain error. *Vences,* 169 F.3d at 613 ("Plain error is found only where there is '(1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings.' ") (citation omitted). On plain error review, the prosecutor's question about Percy's clothing, while neither helpful nor necessary, was far too mild to constitute misconduct, let alone clear and obvious misconduct that affected Percy's substantial rights.

 Percy also failed to object at trial to the prosecutor's statements about the gun's functioning; thus, those statements, too, are reviewed for plain error. The prosecutor asserted during closing argument that the gun felt "normal." That observation, however, did not contravene Percy's testimony or evidence: although Percy testified that he had not meant to fire the rifle, he did not testify that it was mechanically defective or had a "hair trigger." Further, the statement was made in passing, in the context of the prosecutor's suggestion that the jurors find out for themselves what the trigger pull felt like. Because the statements regarding the

---

4. Specifically, the prosecutor asked a witness if he had ever seen Percy dressed in the manner in which he was dressed at trial, arguably implying by his question that Percy was "putting on a false front" at trial.

gun's functioning did not likely affect the outcome of the trial, the statements did not constitute plain error. *See United States v. Lussier,* 128 F.3d 1312, 1317 (9th Cir.1997).

■ With regard to Percy's complaints about the testimony alluding to the stolen car Percy was driving, the prosecutor did not knowingly elicit the testimony. To the contrary, the prosecutor repeatedly warned the witnesses not to mention the stolen car during their testimony. Nonetheless, the witnesses volunteered it in response to questions that had nothing to do with the origin of the car.[5] Absent evidence that the prosecutor intended to elicit the objectionable testimony, his failure to prevent such remarks by the witness did not constitute misconduct on his part.

■ Finally, Percy argues the prosecutor committed misconduct by stating, during closing argument, that "[t]here is no bias and motive for [government witness Rabago] to sit here and lie about these things." According to Percy, the prosecutor knew that Rabago was biased because Rabago had demonstrated bias by improperly testifying about the stolen car. Percy, however, offers no evidence on appeal to suggest that Rabago injected the statement about the stolen car into his testimony out of bias, or that the prosecutor thought that Rabago was biased. In sum, none of Percy's allegations of prosecutorial misconduct necessitates a new trial.

### CONCLUSION

For the foregoing reasons, we affirm Percy's conviction for second degree murder and use of a firearm in a crime of violence.

AFFIRMED.

---

5. The questions that elicited the improper responses were: "What did you do when you found the vehicle?" and "Do you know how Shawn Percy got to the house?"

