**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GREGORY J. OLSON,
*Defendant-Appellant.*

No. 19-16591

D.C. Nos.
2:18-cv-01995-APG
2:12-cr-00327-APG-
VCF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted November 18, 2020
San Francisco, California

Filed February 22, 2021

Before: Sidney R. Thomas, Chief Judge, and Mary M.
Schroeder and Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion;
Concurrence by Chief Judge Thomas;
Concurrence by Judge Berzon

# SUMMARY[*]

## 28 U.S.C. § 2255

The panel affirmed the district court's judgment denying Gregory Olson's 28 U.S.C. § 2255 motion seeking to vacate his sentence on the basis of a claim of ineffective assistance of counsel during plea negotiations that took place before Olson was formally accused of any crime.

Traditionally, the Sixth Amendment has been interpreted to mean that the right to counsel attaches when a criminal defendant is formally charged. *See Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972); *United States v. Hayes*, 231 F.3d 663, 669–70 (9th Cir. 2000) (en banc). Olson asked the court to reexamine this traditional approach to attachment of the Sixth Amendment right to counsel in order to recognize that the right to counsel may attach before there has been a formal charge. The panel wrote that it is not in a position to do so because it cannot overrule binding circuit precedent. The panel further concluded that this is not an appropriate case to ask for an en banc court to consider overruling *Hayes*, because the record does not support Olson's claim that his counsel was ineffective, and an en banc ruling would therefore not affect the result.

Concurring in the judgment, Chief Judge Thomas wrote separately to express his opinion that (1) there is a pre-indictment Sixth Amendment right to counsel when a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

functional equivalent of an indictment exists, and (2) *Hayes* does not foreclose such a result.

Concurring in part, Judge Berzon agreed that Olson's lawyer was not ineffective during the plea negotiations, that *Hayes* is conclusive on the question whether the right to counsel can ever attach before formal judicial proceedings of some kind have begun, and that the panel is bound by *Hayes*. She wrote, however, that *Hayes* imposes a more stringent and bright line test regarding when the Sixth Amendment right to counsel begins than the Supreme Court's case law requires or the underlying Sixth Amendment precepts justify; and that *Hayes* should be reconsidered en banc at the first opportunity.

## COUNSEL

Daniel Hill (argued), Hill Firm PLLC, Las Vegas, Nevada, for Defendant-Appellant.

Elham Roohani (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney, United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

The Sixth Amendment guarantees the accused "[i]n all criminal prosecutions" the right to "the Assistance of Counsel for his defence." Traditionally, this has been interpreted to mean that the right to counsel attaches when a criminal defendant is formally charged. *See Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972); *United States v. Hayes*, 231 F.3d 663, 669–70 (9th Cir. 2000) (en banc). The right to counsel means not merely a right to the services of an attorney, but a right to "reasonably effective" assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Effective assistance generally requires a defendant's counsel to "inform a defendant of the advantages and disadvantages of a plea agreement." *Libretti v. United States*, 516 U.S. 29, 50 (1995).

This 28 U.S.C. § 2255 motion asks us to vacate the movant's sentence on the basis of a claim of ineffective assistance of counsel during plea negotiations that took place before the movant was formally accused of any crime. It represents what may be a growing practice of extensive pre-indictment dealings between prosecutors and their investigation targets, who may or may not be represented by counsel. The movant asks us to reexamine the traditional approach to attachment of the Sixth Amendment right to counsel, as set forth in *Kirby* and *Hayes*, in order to recognize that the right to counsel may attach before there has been a formal charge. This panel is not in a position to do so, however, because we cannot overrule binding circuit precedent. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003). We further conclude that this is not an appropriate case to ask for an en banc court to consider overruling *Hayes*,

since this movant was appointed counsel, and the record indicates that the movant's counsel was not ineffective.

Factual Background

Gregory Olson pleaded guilty to wire fraud and income tax evasion in 2017 after being charged with defrauding his church and its members of over one million dollars between 2006 and 2010. Olson had been serving as a church treasurer and property chairman during that time.

In June 2012, federal prosecutors sent Olson a "target letter" advising him that he was a target of a federal grand jury investigation. The letter invited Olson to "have [his] attorney contact" the U.S. Attorney's office if he was "interested in resolving this matter short of an Indictment." Advising Olson to contact a court clerk for the District Court of Nevada if he could not afford an attorney, the letter warned that "the matter w[ould] proceed in the ordinary course of prosecution" unless prosecutors heard from him within a month.

Olson contacted the court clerk as instructed, and Brenda Weksler, then an assistant federal public defender, was assigned to represent him. Shortly thereafter, prosecutors conveyed a plea offer to his counsel wherein Olson would plead guilty only to tax evasion and the parties would jointly recommend a sentence at the lower end of the guideline range. Defense counsel's handwritten notes suggest that accepting this offer would have led to a recommended sentence of approximately 30 months.

Communications between prosecutors and defense counsel broke down, however, after prosecutors, over defense

counsel's objections, refused to share discovery or interview notes. After some contentious back-and-forth, defense counsel communicated that Olson was willing to plead to a misdemeanor resulting in probation, but prosecutors responded by withdrawing the offer. One week later, a grand jury indicted Olson for wire fraud and tax evasion.

In May 2016, Olson, now represented by different counsel, entered into a plea agreement wherein he pleaded guilty to both wire fraud and tax evasion. The district court sentenced Olson to 48 months in custody and 3 years of supervised release. Olson appealed to this Court, which dismissed under his plea agreement's appeal waiver provisions.

In October 2018, Olson filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. In addition to the ineffectiveness of counsel claim at issue here, the motion claimed that prosecutors violated his Fifth Amendment due process rights by refusing to provide inculpatory and exculpatory information during pre-indictment plea negotiations in 2012. The district court ruled that Olson waived his right to bring the latter claim in his 2016 plea agreement, and that claim is not before us.

Olson's sole claim on appeal is that defense counsel was ineffective in handling prosecutors' 2012 plea offer. In his motion to vacate, Olson declared under penalty of perjury that his public defender in 2012 "did not make contact with [him] and discuss the offer, or provide professional guidance [on] the terms and foreseeable consequences of accepting or rejecting the offer." Olson claimed that his counsel's failure to "effectively communicat[e] the writ[t]en offer . . . caused

the denial of [his] Constitutional right to review and accept or reject the offer."

The district court ordered Olson's pre-indictment counsel to respond to the claim. In a sworn declaration, she stated that she communicated the pre-indictment offer to Olson on the same day it was offered, conveyed that prosecutors had not shared any reports or evidence with her, and explained to Olson that he could face much higher sentencing exposure if indicted. She attached her contemporaneous handwritten notes, which include sentencing calculations under the United States Federal Sentencing Guidelines and document her conversations with prosecutors and with Olson himself. Olson's own memorandum in support of his motion attached contemporaneous emails between defense counsel and prosecutors. The emails explicitly set forth not only that defense counsel communicated the pre-indictment offer to Olson but also that Olson responded by asking her to pass along "his desire to plead to a misdemeanor that will result in probation." The emails also show that, during the time in question, defense counsel found it "impossible" to counsel Olson as to the nature or sufficiency of the government's evidence against him because of prosecutors' refusal to share any discovery. "[B]ecause of my ethical duties," she explained in an email to the prosecutors, "I cannot counsel my client to entertain entering a plea of guilty without having seen any of the evidence involved in this case."

The district court denied Olson's motion to vacate his conviction. The district court concluded that, under binding precedent, "Olson did not have a Sixth Amendment right to effective counsel during the pre-indictment plea negotiation." The district court did grant a certificate of appealability, however, after noting that four judges on the Sixth Circuit

had dissented in a similar case, *Turner v. United States*, 885 F.3d 949, 977–84 (6th Cir. 2018) (en banc) (Stranch, J., dissenting).  We appointed counsel for the appeal, and Olson now asks us to reconsider the bright-line rule adopted in *Hayes*.  We conclude that this panel is bound by *Hayes* and that this is not an appropriate case to reconsider it.  We therefore affirm.  *See Miller*, 335 F.3d at 899.

## Discussion

In *Kirby v. Illinois*, 406 U.S. 682 (1972), a plurality of the Supreme Court described the Court's past cases as "firmly establish[ing] that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Id.* at 688.  The plurality in *Kirby* cited nine previous Sixth Amendment cases and described them as "all . . . involv[ing] points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689.  In subsequent cases, majorities of the Supreme Court have confirmed that "the right to counsel does not attach until the initiation of adversary judicial proceedings." *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Moran v. Burbine*, 475 U.S. 412, 431 (1986).

Circuits have not agreed, however, on whether the *Kirby* line of cases mandates a "bright-line rule" holding that the right to counsel never attaches until formal charges have been initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby*, 406 U.S. at 689. *Compare, e.g.*, *United States v. Waldon*, 363 F.3d 1103, 1112 n.3 (11th Cir. 2004) (rejecting ineffective assistance

claim "out-of-hand, because the Sixth Amendment right to counsel simply does not attach until the initiation of formal adversary proceedings."), *with Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999) ("The right also may attach at earlier stages . . . .").

In *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc), this circuit adopted the bright-line rule. *Id.* at 675; *see also United States v. Percy*, 250 F.3d 720, 725 (9th Cir. 2001) ("This Circuit adheres to the bright-line rule that the Sixth Amendment's right to counsel attaches upon the initiation of formal charges.") (citing *Hayes*). In *Hayes*, the prosecutors kept their tactical options open by declining to bring formal charges against the defendant. 231 F.3d at 666–69. By doing so, prosecutors were able to use a cooperating witness to record an incriminating conversation with the defendant without his counsel present. *Id.* At the same time, prosecutors detained and deposed other material witnesses under the district court's authority—an option contemplated by the Federal Rules of Criminal Procedure only after formal charges have been brought. *Id.* at 666–69, 675. Our en banc majority took note of this apparent gamesmanship but nonetheless adopted the bright-line rule after considering, and rejecting, the defendant's suggestion that we adopt a "functional equivalent" test instead. *See id.* at 669, 673–75. Recognizing the "clear boundaries the Supreme Court has established," our majority adopted the "clean and clear" bright-line rule while admitting that the prosecutors' sequence of actions made us "queasy." *Id.* at 675.

Other circuits have expressed similar discomfort. Though some have accordingly rejected the bright-line rule, none has actually found a violation of the right to counsel prior to the

initiation of formal charges. *See Matteo*, 171 F.3d 877, 892–97 (3d Cir. 1999) (holding that defendant's right to counsel had attached prior to formal proceedings but ultimately finding no constitutional violation); *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992) ("[T]he right to counsel *presumptively* does not attach at pre-indictment lineups.") (emphasis added); *Roberts v. State of Me.*, 48 F.3d 1287, 1291 (1st Cir. 1995) ("We recognize the possibility that the right to counsel might conceivably attach before any formal charges are made . . . ."). Others, including this circuit, have upheld the bright-line rule but expressed reservations. *See, e.g.*, *Hayes*, 231 F.3d at 675 (observing that "it looks like the government is trying to have its cake and eat it too"), *United States v. Heinz*, 983 F.2d 609, 612 (5th Cir. 1993) (noting that pre-*Gouveia* "Supreme Court cases seem to imply that a more functional test . . . is appropriate").

The Sixth Circuit has specifically declined to extend the right to counsel to pre-indictment plea bargaining negotiations like those presented here. *United States v. Moody*, 206 F.3d 609 (6th Cir. 2000). Describing the bright-line rule as a "mandate" from the Supreme Court, the Sixth Circuit concluded, "it is beyond our reach to modify this rule, even in this case where the facts so clearly demonstrate that the rights protected by the Sixth Amendment are endangered." *Id.* at 614; *see also id.* at 616–18 (6th Cir. 2000) (Wiseman, J., concurring but "urg[ing] the Supreme Court to reconsider its bright line test"). Eighteen years later, the court en banc reached the same result, but was deeply divided. *Turner*, 885 F.3d 949 (6th Cir. 2018) (en banc); *id.* at 955–66 (Bush, J., concurring dubitante upon review of the historical record); *id.* at 966–69 (Clay, J., concurring in the

judgment only); *id.* at 976–77 (White, J., concurring in the judgment only); *id.* at 977–84 (Stranch, J., dissenting).

We acknowledge that the bright-line rule allows prosecutors to employ historically uncommon approaches to investigation and prosecution that a more flexible approach to the Sixth Amendment might deter. In *Hayes*, Judge Reinhardt, joined by three other judges, wrote in a dissenting opinion that the prosecutors' "highly unusual step of setting in motion Hayes's trial before bothering to indict him" merited departure from a "mechanical and formalistic approach." 231 F.3d at 676–81 (Reinhardt, J., dissenting). Olson points out, along these lines, that the Supreme Court has recognized post-indictment plea bargaining as a "critical stage" and extended the right to counsel to such proceedings. *Missouri v. Frye*, 566 U.S. 134, 143–44 (2012). Indeed, in criminal cases today, plea negotiations are "almost always the critical point" at which a defendant's fate is sealed. *Id.* at 144.

Olson urges that we eschew the bright-line rule in favor of a multi-factor, case-by-case approach to pre-indictment attachment of the Sixth Amendment right to counsel. He argues that Supreme Court precedent does not mandate the bright-line rule. Even if so, however, we as a three-judge panel "may not overrule a prior decision of the court" unless a higher authority has "effectively overruled" such a decision. *Miller*, 335 F.3d at 899. Because *Frye* cannot be plausibly read to effectively overrule this circuit's decision in *Hayes*— and Olson makes no such argument in any event—the bright-line rule adopted in *Hayes* requires us to find no constitutional violation here.

This panel could, at its discretion, request a vote of active judges to rehear this case en banc under Rule 35 of the Federal Rules of Appellate Procedure. In determining whether this is an appropriate case to do so, we must assess whether Olson might prevail if current circuit precedent were to be overruled. We do not find this case appropriate for such en banc rehearing, because the record does not support Olson's claim that his counsel was ineffective. An en banc ruling would therefore not affect the result.

The record reflects Olson's understandable dissatisfaction with his sentence, which ended up being longer than what the government offered to recommend pre-indictment. He faults his lawyer for failing to provide "professional guidance [on] the terms and foreseeable consequences of accepting or rejecting the offer." The record further reflects, however, that defense counsel was unable to provide any informed guidance because she did not have any information about the strength of the government's case and prosecutors refused to provide any. Olson's pleadings acknowledged this in a separate claim of prosecutorial misconduct—one that was dismissed and is not before us on appeal—wherein Olson alleged that prosecutors violated his due process rights by refusing to disclose any evidence during pre-indictment plea discussions. Olson's inability to predict the probable consequences of accepting or rejecting the pre-indictment plea was, therefore, not due to any ineffectiveness on the part of his attorney.

In his reply brief, Olson's appointed counsel on appeal suggests a somewhat different theory of ineffectiveness: that his pre-indictment counsel never communicated the pre-indictment offer to him at all. The record belies such a claim. The extensive and undisputed record of email communications between defense counsel and prosecutors

confirms that Olson's appointed counsel timely conveyed the pre-indictment plea offer to him. These e-mails even include Olson's unsuccessful counteroffer, conveyed via counsel, to plead guilty to a misdemeanor in exchange for receiving probation.

With 20/20 hindsight, Olson now knows that, had he accepted the pre-indictment offer in 2012, he would have received a lower sentence than the one he actually received five years later. The problem is that neither Olson nor his counsel could have known this in 2012. Olson's counsel, without the benefit of any discovery, was not in a position to advise Olson to accept the offer. Counsel's performance was therefore not deficient.

The judgment of the district court is **AFFIRMED**.

---

THOMAS, Chief Judge, concurring in the judgment:

I concur in the decision to affirm the denial of Olson's 28 U.S.C. § 2255 motion. The record does not support Olson's claim that he received ineffective assistance of counsel during pre-indictment plea negotiations. I write separately to express my opinion that (1) there is a pre-indictment Sixth Amendment right to counsel when a functional equivalent of an indictment exists, and (2) *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc), does not foreclose such a result.

I

The Supreme Court has never squarely addressed whether the Sixth Amendment right to counsel attaches during pre-indictment plea negotiations. Indeed, other circuits have expressly concluded that the Supreme Court's attachment case law permits recognition of the right to counsel in some pre-indictment settings. *See, e.g.*, *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999); *Roberts v. Maine*, 48 F.3d 1287, 1291 (1st Cir. 1995); *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992).

In *Turner v. United States*, 885 F.3d 949 (6th Cir. 2018) (en banc), *cert. denied*, 139 S. Ct. 2740 (2019), where the Sixth Circuit, in a splintered opinion, adhered to "four decades of circuit precedent holding that the Sixth Amendment right to counsel does not extend to preindictment plea negotiations," *id.* at 951, Judge Stranch, in dissent, explained that the touchstone of the Supreme Court's attachment jurisprudence is whether the government conduct at issue is investigatory or accusatory (not simply whether it occurs before or after a formal indictment or its equivalent). *See id.* at 979; *accord Matteo*, 171 F.3d at 892. I agree.

In *Kirby v. Illinois*, 406 U.S. 682 (1972), the Supreme Court defined "the initiation of judicial criminal proceedings," the triggering event for Sixth Amendment attachment purposes, as the moment when investigation ends and prosecution begins:

> The initiation of judicial criminal proceedings
> is far from a mere formalism. It is the starting
> point of our whole system of adversary
> criminal justice. For it is only then that the

> government has *committed itself to prosecute*, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the *prosecutorial forces* of organized society, and immersed in the *intricacies of substantive and procedural criminal law*. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.

406 U.S. at 689–90 (emphasis added). The Court then rejected a claim that a suspect had a Sixth Amendment right to counsel during a pre-indictment showup that took place during a "routine police investigation"—"long before the commencement of any prosecution whatever." *Id.* at 690.

To be sure, since *Kirby*, the Court has used language suggesting that the right to counsel attached after the initiation of adversary proceedings against the defendant. *See, e.g.*, *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198 (2008); *Moran v. Burbine*, 475 U.S. 412, 482 (1986); *United States v. Gouveia*, 467 U.S. 180, 187 (1984). However, the Court has consistently then proceeded to a fact-attuned inquiry about whether the government's pre-indictment conduct crossed the line from investigation to prosecution, rejecting Sixth Amendment claims only where the conduct at issue plainly landed on the investigation side of the line. *See, e.g.*, *Gouveia*, 467 U.S. at 185, 189 (holding that the right to counsel did not extend to the pre-indictment administrative detention of inmates "*being investigated* for criminal activities" because that right does not attach until the

"government has *committed itself to prosecute*"(emphasis added)); *Moran*, 475 U.S. at 416, 430 (reaching the same conclusion as to the pre-indictment police interrogation of an individual under investigation for murder because the Sixth Amendment, "[b]y its very terms," applies "only when the government's role *shifts from investigation to accusation*" (emphasis added)).

*Rothgery*, the latest in the line of attachment cases, most clearly endorses a functional, over formal, approach. There, the Court held that the Sixth Amendment right to counsel kicked in when Rothgery appeared for a pre-indictment probable cause hearing before a magistrate judge and "learn[ed] the charge against him." *Rothgery*, 554 U.S. at 213. The Court reasoned that this event triggered the constitutional guarantee because it "signifie[d] a *sufficient commitment to prosecute* regardless" whether the prosecutor participated in, or was even aware of, the hearing and even absent the filing of an indictment, information, or "formal" complaint. *Id.* at 210 (emphasis added). The Court further rejected the government's interpretation of its cases as espousing the "general rule that the right to counsel attaches" only when "formal charges are filed." *Id.* at 211; *see also id.* at 223–24 (Thomas, J., dissenting) (asserting that Rothgery's "initial appearance before the magistrate did not commence a 'criminal prosecution,'" as "[n]o formal charges had been filed" where "[t]he only document submitted to the magistrate was the arresting officer's affidavit of probable cause").

I agree with Judge Stranch that whether criminal proceedings have been initiated within the meaning of the Court's attachment jurisprudence "depends on both the nature of the relationship between the government and the accused

and the implications of the confrontation." *Turner*, 885 F.3d at 979 (Stranch, J., dissenting). Thus, if one reads the Supreme Court precedent carefully, there is no bright line rule; rather, the Court has taken a functional approach.

II

The majority concludes that *Hayes* established a bright line rule that a criminal defendant does not have a Sixth Amendment right to an attorney before an indictment has been filed. However, *Hayes* also considered the possibility that the right to counsel might attach when the government conduct was the "functional equivalent of the initiation of formal criminal charges." 231 F.3d at 673 (quotation marks omitted).

*Hayes* involved a different circumstance from the one at bar. In *Hayes*, during an investigation of a "complicated, multi-party scheme to sell grades for classes that foreign students did not attend," the government moved for and received court approval to take material witness depositions of several foreign students, who wished to return home. *Id.* at 666. In that motion, the government named Hayes as a target of its investigation. *Id.* at 668. Hayes received notice of the depositions, but his retained counsel neither objected to the motion nor attended the hearing on the motion; shortly before the depositions, appointed counsel began to represent Hayes. *Id.* Around the same time as the depositions, the government covertly taped a conversation between Hayes and a wired co-conspirator. *Id.* at 666, 668. A year later, the government indicted Hayes, who moved to exclude the taped conversation on the ground that the absence of his attorney during that conversation violated his Sixth Amendment right to counsel. *Id.* at 666 (citing *Massiah v. United States*,

377 U.S. 201, 206 (1964) (holding that a defendant was entitled to counsel during a post-indictment interrogation)). The district court held that Hayes did not have a right to counsel in this pre-indictment setting. *Id.* at 667. We affirmed, with the majority concluding that the motion for material witness depositions was not the functional equivalent of an indictment because the government had not committed to charging Hayes, and "the depositions served only to preserve their testimony for trial if there were a trial and the students did not return." *Id.* at 673–74. We concluded that Hayes "was not thereby charged, indicted, or arraigned—and may never have been." *Id.* at 673. "Instead, the government remained an investigator rather than a prosecutor and Hayes was a target, not 'the accused.'" *Id.*; *see also id.* at 674 ("Being a *target* is not enough."). "Under these circumstances," the majority held, "the Sixth Amendment right to counsel did not apply." *Id.* at 675.

By contrast, the government's target letter, coupled with intense plea agreement negotiations, did signal the government's commitment to charge Olson, and was thereby the functional equivalent of an indictment for Sixth Amendment purposes. The government's so-called "target letter" to Olson was unequivocal: It indicated that the government *would* "proceed in the ordinary course of prosecution" if Olson did not indicate interest in "resolving th[e] matter short of an [i]ndictment." During the ensuing plea negotiations, the government further signaled that its investigation into Olson's activities was complete and that it had resolved to prosecute him on the basis of the evidence it had gathered. In an email memorializing the plea offer, an Assistant United States Attorney ("AUSA") informed Olson's counsel, "[I]f your client rejects the offer, the indictment that *will* be proposed to the grand jury *will* include both fraud and

tax charges." The AUSA was not bluffing. A mere week after the pre-indictment plea negotiations fell through, a grand jury indicted Olson.

These circumstances, markedly different from those presented in *Hayes*, foreclose a conclusion that the government "remained an investigator rather than a prosecutor" and Olson a mere "target," who "may never have been" indicted, rather than "the accused." *Hayes*, 231 F.3d at 673; *see also id.* at 669 (noting that the motion for material witness depositions "merely indicated" that the government "*might* seek indictments against the targets"); *id.* at 666 (noting that Hayes was not indicted until "nearly a year" after the depositions and the taped conversation with his co-conspirator). Absent that threshold determination, *Hayes* cannot bind us to hold that Olson was not entitled to counsel during his pre-indictment plea negotiations. *Cf. id.* at 675 (declining to hold that the Sixth Amendment right to counsel had attached "*under th[o]se circumstances*" (emphasis added)).

Under these circumstances, the Sixth Amendment must operate to afford a right to counsel. The government's plea offer implicated the "intricacies of substantive and procedural criminal law," *Kirby*, 406 U.S. at 689, in at least two respects: Olson's counsel and the AUSA discussed Olson's potential exposure under the U.S. Sentencing Guidelines and vehemently disagreed about whether the prosecution had any obligation to disclose evidence to Olson to assist his counsel in assessing the plea terms and whether there was "sufficient evidence to convict him."

A contrary conclusion would overlook  the "core purpose" of the Sixth Amendment counsel guarantee, which

is to "assure aid" to an "accused [] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *Hayes*, 231 F.3d at 670 (quoting *Gouveia*, 467 U.S. at 188–89). It would also lead to the absurd conclusion that, even though Olson had counsel at a critical stage of a criminal proceeding, he had no right to effective assistance of counsel under the Sixth Amendment.

## III

For these reasons, I would hold that the Sixth Amendment right to counsel attaches when there is a functional equivalent of an indictment. Therefore, applied to this case, Olson had a Sixth Amendment right to effective assistance of counsel during pre-indictment plea negotiations where the government had indicated its clear intent to proceed with a prosecution. However, I concur in the judgment because I do not believe, under the circumstances presented in this case, that Olson did not receive effective assistance of counsel.

To the extent that *Hayes* intimates a different conclusion, I respectfully suggest that we revisit the rule *en banc* in an appropriate case.

---

BERZON, Circuit Judge, concurring in part:

I concur in the per curiam opinion's conclusion that Olson's lawyer was not ineffective during the plea negotiations. Further, I agree that *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000) (en banc) is conclusive on the question whether the right to counsel can ever attach before formal judicial proceedings of some kind have begun. On that

point, I note that not only does *Hayes* contain the broad language quoted in the per curiam opinion, but it also specifically summarizes as supporting its conclusion a Sixth Circuit opinion, *United States v. Moody*, 206 F.3d 609 (6th Cir. 2000), that addresses the very issue before us—the availability of the Sixth Amendment right to counsel at pre-indictment plea negotiations even when the commitment to prosecute is apparent.

I am, however, quite convinced that *Hayes* imposes a more stringent and bright line test regarding when the Sixth Amendment right to counsel begins than the Supreme Court's case law requires or the underlying Sixth Amendment precepts justify. And though the recent recognition in *Missouri v. Frye*, 566 U.S. 134 (2012), of the importance of attorney representation during plea bargaining does "undercut the … reasoning underlying [*Hayes*]," it does not do so "in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Our panel is thus bound by *Hayes.*

This difference over whether Hayes is controlling here aside, I agree with Chief Judge Thomas's concurrence generally, and with the following points in particular: First, the Supreme Court case law is best read as setting the line as that between investigation and commitment to prosecution, not between pre- and post-invocation of formal judicial proceedings. *See, e.g.*, *Kirby v. Illinois*, 406 U.S. 682, 689-90 (1972); *United States v. Gouveia*, 467 U.S. 180, 189 (1984). Second, *Hayes*, despite its broad language and reliance on *Moody*, concerns a circumstance entirely different from pre-indictment plea bargaining with regard to the factors that trigger the right to counsel—namely, adversarialness,

commitment to prosecution, and the need to be advised as to technical legal issues.

I add the following: There are two more considerations in addition to those detailed by Chief Judge Thomas that, in my view, support the conclusion that the right to counsel should be triggered in this case and should generally be triggered where pre-indictment plea bargaining is instigated by the government.

First, aside from the particular indices surveyed in Chief Judge Thomas's opinion from the record in this case indicating a commitment to prosecution, such a commitment is inherent when the government makes a specific pre-indictment plea offer. "[P]lea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). Prosecutors cannot know when they make a pre-indictment plea offer whether it will be accepted. And plea agreements are, of course, not self-executing once entered into. If accepted, the offer can only be implemented with the filing of charges and the instigation of judicial proceedings. Moreover, "[t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Specifically, the plea agreement must be approved by a court. And only after judicial sentencing, applying the requisite discretion, and entry of a judgment of conviction can a defendant be incarcerated. *See* Fed. R. Crim. P. 11.

In short, making the offer is ordinarily itself a commitment to prosecute, and so constitutes the onset of an adversarial rather than investigatory process. The specific

surrounding documents in the record in this case reviewed in Chief Judge Thomas's concurrence confirm that understanding, but the making of an actual plea offer is itself, I believe, enough to establish it.

Second, after *Hayes* was decided, *Missouri v. Frye* recognized the importance of the opportunity "for defendants to admit their crimes and receive more favorable terms at sentencing" by plea bargaining, particularly when such negotiations have become "central to the administration of the criminal justice system." 566 U.S. at 143–44. In return, *Frye* explained, the government is able "to conserve valuable prosecutorial resources." *Id*. at 144. *Frye* reasoned that "[i]n order that these benefits can be realized … criminal defendants require effective counsel during plea negotiations." *Id*. The same considerations apply to pre-indictment plea bargains as post-indictment ones.

So, although *Hayes* does draw the Sixth Amendment line at the initiation of "adversary judicial proceedings … 'by way of formal charge, preliminary hearing, indictment, information, or arraignment,'" *Hayes*, 231 F.3d at 675 (*quoting Kirby*, 406 U.S. at 690), it was wrong to do so. Bright-line rules are well and good in some circumstances, but not when they are drawn along the wrong parameters and fence out circumstances that fall on the other side of the barrier when the correct underlying precepts are considered. Pre-indictment plea bargaining is no different from post-indictment plea bargaining as to any of the criteria that matter for recognizing a constitutional right to counsel—the prosecutor's commitment to prosecute; the adversarial relationship between the potential defendant and the prosecution; the critical importance of the plea bargaining process in deciding the defendant's fate; and the need for

technical understanding of the proffered agreement's charges and terms—including sentencing provisions and procedural waivers—as well as of the evidence and the legal defenses available. To require an unaided layperson to consider without consultation with counsel the charges, evidence, and potential sentence so as to evaluate the wisdom of accepting the plea offer, countering it, or refusing it—when the opposing party, the government, is communicating through counsel well versed in all these matters—is to set up an entirely one-sided chess board. The Sixth Amendment, in my view, does not permit the government to game the plea bargaining system by making plea offers before indictment and maintaining that the potential defendant has to go forward essentially defenseless or not at all.

In this case, of course, that is not what happened. Olson did have counsel, appointed before the negotiations, at the government's instigation. This case would look very different had the government tried to negotiate directly with the defendant, as the mismatch, and need for counsel, would then be stark. Yet the necessary corollary of applying *Hayes'* bright line test to this case is that the government could have done that. No right to counsel means just that; any right to bring a habeas case alleging ineffective assistance of counsel that was involved in the negotiations is a corollary of the right to have counsel at all, not a free standing Sixth Amendment right.

I have no doubt that the Sixth Amendment forbids requiring a lay defendant to negotiate unaided by counsel with government prosecutors as to an agreement that could directly seal his fate in a criminal case, whether those negotiations are pre- or post-indictment. I therefor concur most reluctantly in the per curiam opinion's reliance on the

*Hayes* bright line rule regarding when the Sixth Amendment right to counsel begins. But I would reconsider *Hayes* en banc at the first opportunity, for the reasons given in Chief Judge Thomas's concurring opinion and in mine.